

NATIONAL ARBITRATION FORUM

DECISION

CPFilms, Inc. v. Solar Lunar Performance Film
Claim Number: FA0612000861127

**PARTIES**

Complainant is **CPFilms, Inc.** ("Complainant"), represented by **Ryan M. Kaatz**, of **Ladas & Parry**, Digital Brands Practice, 224 South Michigan Avenue, Chicago, IL 60604. Respondent is **Solar Lunar Performance Film** ("Respondent"), represented by **Charles B. Rosenblum**, of **Krohn, Rosenblum and Rosenblum**, 25 Merrick Avenue, Merrick, NY 11566.

**REGISTRAR AND DISPUTED DOMAIN NAME**

The domain name at issue is **<lunarsolarfilm.com>**, registered with **Go Daddy Software, Inc.** (the "Registrar").

**PANEL**

The undersigned certifies that he or she has acted independently and impartially and to the best of his or her knowledge has no known conflict in serving as Panelist in this proceeding.

Mr. Peter L. Michaelson, Esq. as Panelist.

**PROCEDURAL HISTORY**

The Complaint was brought pursuant to the Uniform Domain Name Dispute Resolution Policy ("Policy"), available at <icann.org/services/udrp/udrppolicy24oct99.htm>, which was adopted by the Internet Corporation for Assigned Names and Numbers (ICANN) on August 26, 1999, and approved on October 24, 1999, and in accordance with the ICANN Rules for Uniform Domain Name Dispute Resolution Policy ("Rules") as approved on October 24, 1999, as supplemented by the National Arbitration Forum Supplemental Rules for Uniform Domain Name Dispute Resolution Policy then in effect ("Supplemental Rules").

Complainant submitted a Complaint to the National Arbitration Forum (the "Forum") electronically on December 5, 2006; the Forum received a hard copy of the Complaint on December 8, 2006 together with Annexes (Exhibits) A-M.

On December 6, 2006, the Registrar confirmed by e-mail to the Forum that the **<lunarsolarfilm.com>** domain name is registered with the Registrar and that the Respondent is the current registrant of the name. The Registrar also verified that Respondent is bound by the Go Daddy Software, Inc. registration agreement and has

thereby agreed to resolve domain-name disputes brought by third parties in accordance with the Policy.

On December 12, 2006, a Notification of Complaint and Commencement of Administrative Proceeding (the "Commencement Notification"), setting a deadline of January 2, 2007 by which Respondent could file a Response to the Complaint, was transmitted to Respondent via e-mail, post and fax, to all entities and persons listed on Respondent's registration as technical, administrative and billing contacts, and to postmaster@lunarsolarfilm.com by e-mail.

On December 28, 2006, Respondent requested, pursuant to Supplemental Rule 6, an extension of 20 days to respond to the Complaint due to extenuating circumstances. On December 29, 2006, the Forum, with Complainant's consent, granted Respondent an extension and set a new deadline of January 17, 2007 for filing its response.

A timely Response, with Exhibits A-C, was received and determined to be complete on January 17, 2007.

Thereafter and pursuant to Supplemental Rule 7, Complainant timely filed an additional submission, together with Exhibits A-F, with the Forum on January 22, 2007.

On January 23, 2007, pursuant to Complainant's request to have the dispute decided by a single-member Panel, the Forum appointed Mr. Peter L. Michaelson, Esq. as Panelist and set a deadline of February 6, 2007 to receive the decision from the Panel.

**RELIEF SOUGHT**
Complainant requests that the domain name be transferred from Respondent to Complainant.

**PARTIES' CONTENTIONS**
A. Complainant

1. Confusing similarity/identicality

Complainant contends that the disputed domain name, <**lunarsolarfilm.com**>, is confusingly similar to Complainant's mark LLUMAR inasmuch as the differences between the two, aside from an addition of a generic top level domain, gTLD, (here being ".com") in the name, are:
(a) omission of one letter "l" from the mark;
(b) substitution of the letter "n" in the name for the letter "m" in the mark; and
(c) appending of the descriptive terms "solar film" to the name, those terms being directly related to the goods with which Complainant's mark is registered and used.

Furthermore and alternatively, Complainant opines that, even apart from visual similarity of the name to the mark, the name includes the term "LUNAR". Complainant views this term as a dominant formative of the name and which itself is sufficiently similar, both visually and phonetically, to Complainant's mark LLUMAR as to likely cause confusion.

Thus, Complainant concludes that it has met the requirements of paragraph 4(a)(i) of the Policy.

2. Rights and legitimate interests

Complainant contends, for various reasons, that Respondent has no rights or legitimate interests in the disputed domain name under paragraph 4(a)(ii) of the Policy.

First, Complainant alleges that Respondent, having indicated on its website that it has over thirty years of experience in the window tinting business, is using a confusingly similar domain name, without authorization or consent from Complainant, to divert Internet users to Respondent's site which offers products that directly compete with those of Complainant. Consequently, Complainant concludes that this use of the name does not constitute use in connection with a bona fide offering of goods or a legitimate noncommercial or fair use under paragraphs 4(c)(i) and 4(c)(iii), respectively, of the Policy.

Second, Complainant alleges that, inasmuch as Respondent willingly offered to sell the disputed domain name to Complainant for US $ 8,500.00 -- an amount far in excess of Respondent's cost of registration, this act alone evinces that Respondent has no rights or legitimate interests in the name under general paragraph 4(a)(2) of the Policy.

Third, Complainant states that it has not authorized, licensed or provided its consent to Respondent to use the disputed domain name or any domain name confusingly similar to its LLUMAR Marks. Additionally, Complainant states that to its knowledge, Respondent:
(a) has no prior trademark applications or registrations existing anywhere in the world for any mark that incorporates the term "LLUMAR";
(b) as evidenced by an entry in the WHOIS database for the disputed domain name, prior to the filing of the Complainant, is not known by the term LLUMAR;
(c) as indicated by an online search of the New York State, Department of State (a copy of the search results appears in Annex G to the Complaint), is not identified as associated with any business company named "Lunar Solar Film" nor does such an entity even exist, nor is there any business company named "Solar Lunar Performance Film" either -- the latter being the entity noted, subsequent to the filing of the Complaint, as actually having registered the disputed domain name.
Consequently, Complainant concludes that Respondent is not commonly known by the disputed domain name <lunarsolarfilm.com> and thus fails to satisfy paragraph 4(c)(ii) of the Policy.

Thus, Complainant concludes that Respondent cannot show that it has rights or legitimate interests in the disputed domain name under any provision of paragraph 4(c) or the general provision 4(a)(ii) of the Policy.

3. Bad faith use and registration

Complainant contends that, here too for various reasons, Respondent has registered and is using the disputed domain name in bad faith, hence in violation of paragraph 4(a)(iii) of the Policy.

First, Complainant points to Respondent's offer to sell the name to Complainant for US $ 8,500.00 -- which far exceeds Respondent's cost of registration as itself in violation of paragraph 4(b)(i) of the Policy.

Second, Complainant alleges that Respondent, in using the disputed domain name with a website through which Respondent advertises its window tinting products, is intentionally attempting to divert, for commercial gain, Internet users from Complainant's site to Respondent's own site by creating a likelihood of confusion as to source, sponsorship or endorsement of Respondent's goods with Complainant's LLUMAR Marks. Hence, Complainant believes that this conduct reflects bad faith registration and use under paragraph 4(b)(iv) of the Policy.

Further, Respondent, by using the disputed domain name with directly offering products that compete with Complainant's offering, is disrupting Complainant's business, and thus contravenes paragraph 4(b)(iii) of the Policy.

Lastly, Complainant contends, given its extensive presence in the window film market, that Respondent "obviously knew" or should have known of Complainant's prior trademark rights in its LLUMAR marks. Hence, Respondent's actions in registering and using the disputed domain name in spite of that knowledge, whether actual or constructive, further constitutes bad faith use and registration under general paragraph 4(a)(iii) of the Policy.

B. Respondent

1. Confusing similarity/identicality

Respondent argues that the disputed domain name is not confusingly similar to Complainant's LLUMAR Marks.

Respondent contends that, as indicated in online dictionaries (online version of the Merriam-Webster Dictionary or Dictionary.com -- copies of salient pages therefrom have been provided in Exhibit A to the Response), each of the terms "LLUMAR" or

"LUMAR" has no specific meaning in the English-language. In contrast, the term "lunar" -- which appears in the disputed domain name -- does and specifically in the context of Respondent's business, i.e. as being for its primary meaning "anything involving or pertaining to the moon" (see Dictionary.com and the American Heritage Dictionary of the English Language, Fourth Edition-- salient pages from which also appear in Exhibit A). The term "LUNAR" has, as its secondary meaning, "pertaining to or relating to silver" (see salient pages of Dictionary.com and American Heritage Dictionary provided in Exhibit B to the Response). Respondent's product line consists of window films in silver, charcoal, gray or bronze tint. Hence, given these meanings, Respondent states that "[t]he use of the word 'lunar' therefore relates to both the moon and the color of one of Respondent's largest selling products."

Respondent further contends that the term "lunar" is a generic term as are all the other words "solar" and "film" in the disputed domain name. None of these words is capable of acquiring any secondary meaning and thus is quite distinguishable from the term "LLUMAR" so as to preclude any confusion from occurring.

Furthermore, Respondent views Complainant's argument that the term "lunar" is sufficiently similar, both visually and phonetically, to "LLUMAR" because the latter can result from changing two letters in the former (removing an "l" and substituting an "n" for an "m") and thus cause a likelihood of confusion, as simply absurd -- the terms are just too disparate from each other.

2. Rights and legitimate interests

Respondent claims that it has rights and legitimate interests in the disputed domain name based on the following reasons.

First, for a period commencing ten months prior to the date of the Complaint, Respondent has "worked tirelessly" to build its business. Respondent's start-up costs which directly involved the disputed domain name exceeded US $ 8,500.00 and included name registration, web site design, printing costs for packing stickers, etc. -- all as delineated in the Response, with copies of corresponding invoices having been provided in Exhibit C to the Response. Moreover, Respondent states that the "initial capital investment was all of one of the principal's life savings. He has no other means of support and will suffer great financial hardship if his domain name is transferred."

Respondent states that its "offer to accept its out of pocket expenses was made in good faith. ... The Respondent is simply trying to make a living using a legitimate domain name that it has a legitimate interest in and should not be penalized by the Complainant's overzealous attempt to procure its name."

Second, Respondent states that ever since it started its business, it has been known by the name "lunarsolarfilm.com". Even though Respondent also registered the names:

<lunarperformancefilm.com>, <solarlunarorformance.com> and <lunarperformancesolarfilm.com>, it has not used any of these other names.

Lastly, Respondent states that it registered the disputed domain name without any prior knowledge of Complainant and hence without any intention to divert of confuse any of Complainant's customers.

3. Bad faith use and registration

For several reasons, Respondent contends that it has neither registered nor used the disputed domain name in bad faith.

As indicated immediately above, Respondent states that it had no prior knowledge of Complainant when it registered the disputed domain name. Moreover, even if it had any such knowledge, it would have believed that the term "LUNAR" is sufficiently divergent from "LLUMAR" to dispel any likelihood of confusion between the disputed domain name and Complainant's LLUMAR Marks and hence any concern on Respondent's part. Consequently, Respondent had no intention of either disrupting Complainant's business or intentionally attempting, through any confusion, to divert Internet users to its website from Complainant's site.

Respondent points to the results of a Google search, that it conducted for "window film" and which yielded approximately 50,400 hits. These results listed "CPFilms" as the first hit and <llumar.com> as the second hit with, within the first 300 results, additional references to CPFilms and Llumar but no hits for the disputed domain name or Respondent. Hence, no Internet search engine being queried for either "Llumar" or "Lunar" would likely form an association between the two terms. Thus, Respondent believes that any suggestion that it intended to divert any Internet users from Complainant's website is implausible.

Further, Respondent opines that had it known of Complainant's marks prior to Respondent having incurred its investment in the name, Respondent would likely have transferred the name to Complainant and used on of the other names it registered. Once having incurred these costs, Respondent offered to transfer the name at a sum, i.e., US $ 8500.00, through which Respondent could sufficiently recoup its costs.

4. Reverse Domain Name Hijacking

Respondent alleges that Complainant, in having filed the Complaint for transfer of the disputed domain name based on "tenuous and unfounded" allegations, is using the Policy in bad faith to deprive Respondent of the disputed domain name and hence has committed Reverse Domain Name Hijacking.

Specifically, Respondent believes that "Complainant may want to use the name Lunar in its future promotions and has chosen to file this Complaint as an inappropriate method for taking a registered domain name from its rightful and proper owner."

C. Complainant's Additional Submission

The Panel has fully considered the additional submission filed by Complainant. Respondent did not file an additional submission in response. Though Complainant's submission primarily amplifies various arguments previously set forth in the Complaint, three points merit some mention here.

First, Complainant questions Respondent's assertion that it was unaware of Complainant or its LLUMAR glass treatment films when it registered the disputed domain name. In that regard and as indicated in the marketing materials provided in Exhibit A to Complainant's Additional Submission, more than 100 LLUMAR glass treatment films designed for solar control, safety and decorative applications exist with these films being supported by a global network of more than 8,000 distributors and dealers. Since 2001 and as indicated in a spreadsheet provided in Exhibit B to Complainant's Additional Submission, Complainant has spent close to US $ 4 Million in advertising for LLUMAR window films. Further, Complainant's original trademark registration for the mark LLUMAR dates back to 1978 -- which nearly equals the thirty-year period during which Respondent's principals have engaged in the window tinting industry.

Second, as to Respondent's Internet search through the Google search engine, Complainant believes that it is common knowledge that Internet search engines search for identical matches to an entered search term and list results according to relevancy. Hence, Complainant contends that "[i]t is not surprising that individual searches for LLUMAR and 'lunar' do not reveal an association. Moreover, the high number of references to Complainant and the LLUMAR mark in the search results for 'window film' is a testament to Complainant's market presence and the fame of the LLUMAR mark."

Lastly, regarding reverse domain name hijacking, Complainant points to the existence of its various trademark registrations and its marketing campaigns, and states that it is simply "enforcing its exclusive rights in its LLUMAR trademark against infringing activities" and hence not engaging in reverse domain name hijacking.

**FINDINGS**

A copy of the WhoIs registration record for the disputed domain name appears in Annex A to the Complaint. As indicated on this record, Respondent registered the name on March 10, 2006.

A. Complainant's LLUMAR Marks

Complainant owns numerous United States and foreign trademark registrations for marks that constitute the term "LLUMAR", either by itself or in conjunction with other terms, and on which this dispute is based. Complainant has provided, in Annex D to the Complaint, a copy of the entries from the publicly available Trademark Electronic Search System (TESS) database for its two US registrations, and, in Annex E, a list of its foreign trademark registrations. Details of its two US registrations are as follows:

a)   LLUMAR (block letters)
     United States registration 1,089,700; registered: April 18, 1978
     filed: August 18, 1977

This mark was registered for use in connection with "weatherized polyester film" in international class 17. This registration claims first use and first use in commerce of July 14, 1977.

a)   LLUMARIZE (block letters)
     United States registration 2,024,639; registered: December 17, 1996
     filed: May 22, 1995

This mark was registered for use in connection with "application of weatherized polyester film to automobiles and residential and commercial buildings" in international class 40. This registration claims first use and first use in commerce of July 31, 1995.

B. Complainant and its activities

Solutia, Inc. ("Solutia") operates in the applied chemistry industry with more than US $ 3 Billion in annual global sales and over 9,000 employees located at 35 manufacturing sites throughout the world. Solutia was founded in 1901 as Monsanto Company ("Monsanto"). In 1997, Monsanto shareholders approved a spin-off of Solutia as a specialty chemicals company.

Complainant, CPFilms, Inc. ("CPFilms"), a subsidiary of Solutia, designs, manufactures and sells solar control and safety window film for both automotive and building applications. CPFilms continuously invests in machinery, technology, and the skills and training of employees to keep it at the forefront of the window film industry. CPFilms has operated as a subsidiary of Solutia since 1999.

Complainant is the world's largest manufacturer of window film. It sells more square footage of window film and window film components worldwide than all other manufacturer members of the International Window Film Association combined.

Complainant currently dedicates over 700,000 square feet of manufacturing space toward the production and enhancement of its polyester films and has the ability to produce a

complete line of solar and security window films in-house. Complainant's production capabilities include color dyeing, sputtering, metallizing, solution coating, laminating and slitting.

LLUMAR film is one of Complainant's preeminent window film product lines. This film is a micro-thin, high-performance film which is professionally applied to glass in order to improve its performance characteristics and reduce energy usage (e.g., through cooling). Depending on the selection of film, LLUMAR film can decrease from 12 to 93% of incoming light propagating through the film, up to 99.9% of ultraviolet light and 79% of incoming solar energy. LLUMAR film can address a variety of problems associated with windows, including excessive heat gain, glare, interior fading, aesthetics, safety, security, graffiti and glass decoration, and is often recognized worldwide as a best-selling brand of window tinting film.

C. Respondent and its activities

The principals of the Respondent have been in the automotive window tinting field for more than thirty years. They have successfully worked as independent installers of window film predominantly in automobiles and occasionally in boats. As their respective businesses expanded, they collaborated to buy window film in bulk to get a reduced price from their manufacturer and occasionally resold rolls of films to various end users. They slowly developed a market for selling window film and by 2006 decided to create a web site to supplement their business and promote the sale of their products.

Respondent's principals searched for a name that would succinctly describe their business. They believed that the use of the words "lunar" and "solar" were popular, generic descriptors in the window tinting business and a domain name having those terms were logical extensions of what their tinting products accomplished. Specifically, they believed that "Solar" is a popular reference to film which protects from and diminishes effects of the sun's rays. They also believed that the term "Lunar", having to do with the moon, in conjunction with "solar", has a filtering effect on the sun's rays as in a lunar eclipse or simply represents a muted light source in comparison to the sun's brightness.

Respondent's web site accessible at <lunarsolarfilm.com> has become a marginally successful web site -- with increasing sales over the prior ten months since the date of the Response -- and it is the sole source of income for one of the principals of the Respondents. A hard-copy of the home page -- to which the disputed domain name resolves -- and various lower level pages from Respondents' web site appears in Annex F to the Complaint. In addition to the sale of rolls of automotive window film, the principals of Respondent have developed a "do it yourself" installation kit with film and tools provided for the weekend warrior handy man or woman.

D. Interactions between the parties

Complainant, on September 14, 2006 and upon discovery of Respondent's registration of the disputed domain name, sent a cease-and-desist letter (a copy of which appears in Annex H to the Complaint) to the address listed on Respondent's website. Complainant did not receive a response. Subsequently, on September 28, 2006, Complainant sent a follow-up e-mail message to Respondent. A copy of this message appears in Annex I to the Complaint.

Until that correspondence, Respondent had not heard of Complainant, CPFilms. After having considered Complainant's position, Respondent believed that the disputed domain name and Complainant's marks were sufficiently dissimilar so as not to cause any confusion. However, to avoid litigation expenses, Respondent indicated its willingness to transfer the disputed domain name to Complainant for US $ 8,500.00 which represented the expenses which Respondent had incurred in connection with its use of the name -- not just name registration, but also web site design and related charges. As noted above, those expenses are itemized in the Response.

Respondent, through its e-mail response dated September 30, 2006 (a copy of which appears in Exhibit J to the Complaint) stated, in pertinent part:
> "Hello! I have contact the owner. He was not aware of this company llumar or cpfilms, inc. He invested a lot of money into his website and labeling etc almost everything he owns. He is very sorry that you feel as though he is infringing on your company. He stated it is totally two different names. He is willing to sell the domain name for $ 8,500.00. Payment should be made quickly no less than 4 business days or he will then be selling it to another person for $ 12,500.00."

On October 5, 2006, Complainant responded by e-mail (a copy of which appears in Annex K to the Complaint) to Respondent's message. Through its message, Complainant rejected Respondent's offer. Having received no response, Complainant sent a follow-up e-mail message (a copy of which appears in Annex L to the Complaint) on October 19, 2006 to Respondent, to which no response was received.

## DISCUSSION
Paragraph 15(a) of the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules") instructs this Panel to "decide a complaint on the basis of the statements and documents submitted in accordance with the Policy, these Rules and any rules and principles of law that it deems applicable."

Paragraph 4(a) of the Policy requires that the Complainant must prove each of the following three elements to obtain an order that a domain name should be cancelled or transferred:

(1) the domain name registered by the Respondent is identical or confusingly similar to a trademark or service mark in which the Complainant has rights;
(2) the Respondent has no rights or legitimate interests in respect of the domain name; and
(3) the domain name has been registered and is being used in bad faith.

**Identical and/or Confusingly Similar**

The Panel finds that the disputed domain name is not confusingly similar to the Complainant's LLUMAR marks.

It is now very well-established in UDRP precedent, including numerous decisions previously rendered by this Panel, that a minor variation, such as adding short letter or number groups or even generic words to a mark or changing a letter in the mark, are each insufficient in and of itself, when used in forming a domain name that results from modifying the mark, to confer requisite and sufficient distinctiveness to that name to avoid user confusion. In such instance, such changes simply fail to impart such requisite and added distinctiveness to the resulting domain name and probably never will. *See, e.g., Google Inc. v. Burns*, FA 726096 (Nat. Arb. Forum August 16, 2006); *The Cheesecake Factory Inc. and The Cheesecake Factory Assets Co., LLC v. Say Cheesecake*, D2005-0766 (WIPO September 12, 2005); *Napster, Inc. v. Vinscani*, D2005-0531 (WIPO July 19, 2005); *Caesars Entm't, Inc. v. Nova Internet Inc*, D2005-0411 (WIPO June 22, 2005); *Lockheed Martin Corp. v. The Skunkworx Custom Cycle,* D2004-0824 (WIPO January 18, 2005); *Lockheed Martin Corp. v. Teramani*, D2004-0836 (WIPO December 1, 2004); *Nat'l Collegiate Athletic Ass'n v. Brown*, D2004-0491 (WIPO August 30, 2004). This result follows from a simple comparison of a disputed domain name against a complainant's mark where the change is patently insignificant.

Yet, the test is neither what constitutes a "minor" difference nor how many such "minor" differences exist in any situation but rather whether the domain name, when viewed in its entirety, has requisite distinctiveness apart from the mark such that no confusion is likely to arise in the minds of Internet users from concurrent use of the two. It is very clear to this Panel -- as it has been to many prior ICANN panels, that a single, simple alteration to a mark, such as adding, e.g., a punctuation mark, changing a letter, inserting a number, or even appending a generic word or phrase to the mark to yield a domain name, and as embodied in the cited decisions above, is with rare exceptions insufficient to impart requisite distinctiveness to the name apart from the mark.

However, as the overall difference between the domain name and the mark becomes

more pronounced -- as is certainly the case here -- than a single, simple readily apparent modification, the focus must not be on a granular basis where each alleged alteration is assessed in isolation apart from any other alteration, but rather from a vantage point of viewing the domain name and comparing it against the mark, with each being viewed in its entirety.

To this Panel, a finding of confusingly similarity does not follow simply because a number of differences exist between a mark and a name where each difference taken alone and devoid of any other difference would render the resulting name confusingly similar to the mark. Simply stated, the sum of those differences is not necessarily just reflective of each of its parts, as all the differences, when taken together, may well operate synergistically to yield a domain name that is so disparate from the mark to completely dispel any notion that confusion would likely occur between it and the mark.

With the above methodology in mind, the Panel simply does not find, based on its own assessment of the name at issue here and the Complainant's marks, that the disputed domain name <**lunarsolarfilm.com**> is sufficiently similar to the mark LLUMAR -- when both are viewed in their entirety, such that confusion is likely to result from concurrent use. The two are simply too divergent, in, e.g., sight, sound and resulting overall mental impression, for confusion to arise in the minds of Internet users. *See, e.g., Goggle, Inc. v. Richard Wolfe*, FA 275419 (Nat. Arb. Forum July 18, 2004) (finding the name <froggles.com> to be sufficiently dissimilar to the mark GOOGLE as not to be confusingly similar); *see also Broadcom Corp. v. Smoking Domains & Lehman*, FA 137037 (Nat. Arb. Forum Feb. 11, 2003) (finding the name <broadcommunications.com> to be sufficiently dissimilar to the mark BROADCOM such that the name was not confusingly similar to the mark).

Because the assessment of confusing similarity in any one instance -- such as here where more than a single, simple alteration exists between the name and the mark -- is so highly dependent on the specific facts in issue and unavoidably includes an element of subjective analysis by the decision-maker, future ICANN panels are advised to exercise caution as the precedential value of any such assessment on future cases is likely to be rather limited.

Therefore, the Complainant, in the absence of proving confusingly similarity between its LLUMAR Marks and the disputed domain name, has failed to meet its burden under paragraph 4(a)(i) of the Policy.

### Rights or Legitimate Interests; Registration and Use in Bad Faith

Given the Panel's findings that the disputed domain name is neither identical nor confusingly to the Complainant's LLUMAR Marks under paragraph 4(a)(i) of the Policy, which is sufficient in and of itself to defeat Complainant's request for relief under paragraph 4(a) of the Policy, there is no need for the Panel to address any issue as to whether: (a) the Respondent has rights or legitimate interests in the name, and (b) whether Respondent both registered and used the name in bad faith. Thus, the Panel declines the opportunity to do so and hence will not opine on either of these issues. *See, e.g., Hugo Daniel Barbaca Bejinha v. Whois Guard Protected*, FA 836538 (Nat. Arb. Forum Dec. 28, 2006); *see also Pom Wonderful LLC v. Redavid*, FA 846577 (Nat. Arb. Forum Jan. 8, 2006).

Inasmuch as Complainant has failed to meet its burden under paragraph 4(a)(i) of the Policy, therefore it has failed to establish a *prima facie* case for relief under paragraph 4(a).

### Reverse Domain Name Hijacking

For a panel to find that a complainant has engaged in reverse domain name hijacking (RDNH), much more is required on the part of a complainant than just tenacious enforcement of its marks -- even if its claim under the Policy is ultimately proven to be erroneous. In this Panel's view, to qualify as being RDNH, a complainant's enforcement activities must be sufficiently egregious such as, for example, continuing to prosecute its claim in spite of knowing that the claim is likely to be baseless but nevertheless with the apparent intent of harassing a respondent into transferring the name at issue in order to end the harassment. Such is simply not the case here as the record falls far short of proving any egregious conduct on the part of this Complainant. Hence, the Panel declines to find the Complainant's actions here to constitute RDNH.

## DECISION

Consequently and in accordance with the elements of the ICANN Policy, the relief sought by Complainant is hereby **DENIED**.

Further, the Respondent's request for the Panel to categorize Complainant's conduct in filing its complaint as being reverse domain name hijacking is **DENIED**.

_____
Peter L. Michaelson, Esq.
Arbitrator

        Peter L. Michaelson, Esq., Panelist
              Dated: February 6, 2007